# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5377 | **DATE** | 8/3/2001 |
| **CASE TITLE** | Triplett vs. Midwest Wrecking, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' joint motion to dismiss (18-1) is granted in part and denied in part. Accordingly, Counts I, II and IV are dismissed against Stanley Lempa and Daniel Lempa, but not Midwest. This court has supplemental jurisdiction over the state law claim in Count III. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | AUG 06 2001 | 29 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | /s/ | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | 8/3/2001 | |
| MPJ | courtroom deputy's initials | 01 AUG -3 PM 5:56 | date mailed notice MPJ | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KAREN D. TRIPLETT,          )
                            )
         Plaintiff,         )
                            )
     v.                     )   No. 00 C 5377
                            )
MIDWEST WRECKING COMPANY,   )
STANLEY LEMPA, and          )
DANIEL LEMPA,               )
                            )
         Defendants.        )

DOCKETED
AUG 0 6 2001

## MEMORANDUM OPINION AND ORDER

Karen D. Triplett, an African-American woman, was fired by her employer, Midwest Wrecking Company ("Midwest"). She sued Midwest and her two supervisors, Daniel Lempa and Stanley Lempa (the "Lempas"), for race discrimination (Count I), hostile work environment (Count II), and retaliatory discharge (Count IV), under Title VII. Additionally, Triplett brings a state law claim for slander (Count III). Midwest moves to dismiss Counts I, II, and IV against all defendants, pursuant to Fed. R. Civ. P. 12(b)(6). The motion to dismiss is granted in part and denied in part.

I.

Triplett was employed by Midwest from September 25, 1999 to May 15, 2000. Midwest is a general contracting and wrecking business. Stanley Lempa is the Vice-President of Midwest and is in charge of managing employees and running the day-to-day business operations. Daniel Lempa is the treasurer of Midwest, and runs the

day-to-day financial operations. The Lempas were Triplett's supervisors at Midwest.

Triplett was hired by Midwest as an administrative assistant. At the time Triplett was hired, she was the only African-American employee of about 15 employees. She claims that in the initial employment interview, Midwest told her that she would be given formal training and duties such as procuring, drafting, and filing city permits, accompanying work crews to demolition sites, and preparing forms to be filed with the Environmental Protection Agency. Triplett alleges that once she accepted employment, she was denied any formal training, which was instead given to two white women who were also hired as administrative assistants. Triplett also claims that her supervisors made unfounded complaints about her work and made her perform menial, demeaning duties, such as hanging and removing pictures around the office each month and pouring water down floor drains in the office to prevent insects from entering the office. Additionally, Triplett alleges that the two white women, with equal or less seniority, were paid $3.50 more per hour. In November 1999, Triplett asked Daniel Lempa for a raise. In January 2000, she received a raise of $1.00 per hour.

Also, in January 2000, Triplett was diagnosed with hypothyroidism, which caused fatigue and nervousness, and she immediately informed her employer of her illness. On March 17, Midwest discovered that four union checks it issued had been

stolen, duplicated, and forged. Midwest was informed by its bank that an African-American or Hispanic man had attempted to cash one of the checks. Shortly after, on March 20, Triplett did not attend work due to illness and missed a weekly staff meeting. At that meeting, Stanley Lempa discussed the possibility of Triplett's involvement in the check theft. When she returned to work on March 22, Triplett claims that she was ostracized, and that her work environment became very strained and tense. No formal charges were ever filed against her.

In April 2000, Daniel Lempa called Triplett into his office and told her that she seemed sluggish and was not acting like she wanted to work. On May 15, 2000, Triplett filed her first charge of discrimination with the EEOC. On May 16, 2000, Triplett was fired, and on that same day, she filed a second charge with the EEOC, along with a charge questionnaire. On August 31, 2000, Triplett filed a pro se complaint against Midwest. She also filed a Motion to Proceed In Forma Pauperis. On January 3, 2001, I denied this motion, and gave leave for Triplett to pay the required filing fee on or before January 5, 2001. Triplett paid the filing fee on January 3, two days before the deadline.

## II.

I grant a motion to dismiss for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.

3

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). I accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 626-27 (7th Cir. 1995).

### III.

#### A.

Defendants argue that Triplett's Title VII claims should be barred because she failed to file the lawsuit within a timely manner. Under Title VII, a plaintiff must sue within 90 days of the receipt of a right to sue letter. 42 U.S.C. § 2000e-5(f)(1). This 90-day time limit is not jurisdictional, but, "like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The filing of a petition to proceed *in forma pauperis* ("IFP") extends or tolls the filing deadline until a ruling is made on the plaintiff's petition. *Williams-Guice v. Bd. of Educ. of the City of Chicago*, 45 F.3d 161, 164 (7th Cir. 1995). Under the local rules in this district, if the IFP petition is denied, then the plaintiff must pay the fees within 15 days after notice of the denial of the petition, or *within another time limit set by the court*. Local General Rule 3.3. If the plaintiff does not pay the fees, then the court may dismiss the action or apply other sanctions. *Id.*

4

Triplett received her "Dismissal and Notice of Rights" letter on June 21, 2000. Ordinarily, she would have been required to file suit 90 days after that date. However, on August 31, 2000, with 19 days remaining in the statutory period, Triplett filed her original pro se complaint along with an IFP petition. On December 7, 2000, I denied her IFP petition and ordered Triplett to pay the filing fee by January 5, 2001. Triplett complied with this order, paying the filing fee on January 3, 2001.

The defendants do not dispute that Triplett complied with my order, but instead argue that she paid the filing fee eight days after the 90 day limitation period had expired. They argue that although I have certain general authority to extend the time for unsuccessful petitioners to pay the required fees, I lack the authority to extend the prescribed 90 day limitation period in the statute. Because the statute of limitations under Title VII is not jurisdictional, *Zipes*, 455 U.S. at 386, I have "some power to accommodate . . . frictions within the system of litigation." *Williams-Guice*, 45 F.3d at 165. In *Williams-Guice*, the Seventh Circuit suggested that the district court extend the time period when an IFP petition is denied for no more than that remaining in the limitations period or 15 days, whichever is greater. *Id.* The court did say, as a "potential answer", that when an IFP petition is filed, the statute of limitations "remains in suspension for a 'reasonable time' -- *perhaps* a time defined by local rules -- after

5

the district court's order." *Id.* (emphasis added). The Seventh Circuit pointedly did not say that a district court is bound by the limit in the Local Rules, or that it could not exercise the power the Local Rules give to extend the limit. Local Rule 3.3 plainly states that I may set another time limit, other than the 15 days, for which a plaintiff must pay the filing fee after receiving the denial. I extended Triplett's time to pay the fee for 10 days beyond the 90 days allowed by statute. This is certainly a reasonable time. Her complaint is not time-barred.

B.

The defendants argue that Triplett's retaliatory discharge claim should be dismissed because she failed to assert that claim in the EEOC charges. Generally, a plaintiff may not include in a judicial complaint any claim not included in her EEOC charge. *Lamas v. Freeman Decorating Co.*, 37 F. Supp. 2d 1105, 1106 (N.D. Ill. 1999). However, a plaintiff may include any claims "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* In determining whether the claims fall within those raised by the EEOC charge, I determine whether the claim could have developed from the EEOC's investigation of the charges. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). I may look beyond the four corners of the EEOC charge form, including a charge questionnaire completed on the same day as the related EEOC charge when it is clear that the charging party

6

intended the agency to investigate the allegations. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994).

Triplett filed the first charge form with the EEOC on May 15, 2000. The very next day, the day she was terminated, she filed a second charge form. Along with the second charge form, she filed a charge questionnaire. On both charge forms, Triplett checked only the box labeled "race," but did not check the box labeled "retaliation." However, in the charge questionnaire, she circled the word "retaliation," and stated that "it was [the Lempa's] intention to fire me to hide the fact that I had been discriminated against at the beginning employment and the false accusation of which they had no proof." The Seventh Circuit has found claims to be within the scope of the charge where a box indicating a form of discrimination was not checked, but the body of the charge contains a narrative statement asserting that form of discrimination. *Kristufeck v. Hussman Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993); *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976). Technicalities are particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process. *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972). The issue is whether defendants had notice of the charges. Though Triplett, unassisted by an attorney, failed to check the box labeled retaliation, she adequately asserted the retaliation charge in the questionnaire.

7

The defendants further argue that Triplett's November 1999 complaint about wage disparity is not reasonably related to her termination on May 15, 2000, because of the six month gap between these events. The defendants rely on *Hughes v. Derwinsky*, 967 F.2d 1168 (7th Cir. 1992), in which the Seventh Circuit held, on a motion for summary judgment, that a four month gap between an alleged protected activity and retaliation is insufficient to support an inference for the adverse action. *Id.* at 1174-1175. However, I am not deciding a motion for summary judgment, but a motion to dismiss in which I accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chaney*, 52 F.3d at 626-27. In order to establish a *prima facie* case, Triplett must show that "(1) she engaged in statutorily protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal connection between the protected expression and the adverse action." *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1313 (7th Cir. 1989). Triplett's complaint, which I must accept as true, sufficiently alleges a causal link by stating that the adverse action was a "direct result of and in retaliation" for plaintiff engaging in the protected activity. Conclusions satisfy notice pleading requirements so long as they give notice of the claim. *See McCormick v. City of Chicago*, 230 F.3d 319, 324-325 (7th Cir. 2000). When there may be valid reasons why the adverse employment

8

action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation. *Kachmar v. Sunguard Data Sys.*, 109 F.3d 173, 178 (3rd Cir. 1997). Triplett's allegations satisfy the pleading requirement for a case of retaliation.

C.

The defendants also argue that the Title VII claims against the Lempas as individual defendants are barred because neither was named as a respondent in Triplett's EEOC charge, and Triplett fails to allege that the Lempas employed her in their personal capacity. Generally, a party not named in an EEOC charge may not be sued under Title VII. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). But a party not named in an EEOC charge may be sued where the unnamed party received adequate notice of the charge under circumstances providing him with the opportunity to participate in any conciliation proceedings. *Id.* at 126-27. Here, Triplett named only Midwest as the respondent in her two EEOC charges, but she did name the Lempas in her charge questionnaire. Also, the Lempas had notice of Triplett's EEOC charge because they participated in the EEOC investigation.

The Lempas argue that they never had notice that they were personally subject to suit. That is of no consequence. The Lempas are sufficiently named and alluded to in the factual statement, so they are properly joined. *Eggelston v. Chicago Journeymen Plumbers'*

*Local Union No. 130*, 657 F.2d 890, 905 (7th Cir. 1981); *Jenkins*, 538 F.2d at 166-68. Moreover, even unnamed officers of a company are commonly found to have been properly notified of an EEOC charge when they occupy high level corporate positions because their interests are substantially similar to those of the company. *See Talley v. Leo J. Shapiro & Assocs., Inc.*, 713 F. Supp. 254, 259 (N.D. Ill. 1989). Daniel and Stanley Lempa are the Treasurer and Vice-President of Midwest, respectively, and both are in charge of day to day operations of the small business, and therefore, have interests similar to Midwest.

However, the Lempas cannot be held individually liable under Title VII because neither employed Triplett in his personal capacity. Liability for employment discrimination under Title VII can only be imposed against an individual who qualifies independently as an employer. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995). Generally, supervisors of an employee cannot be sued under Title VII in their individual capacities, because such individuals do not independently qualify as "employers." *Welch v. Cook County Clerk's Office*, 36 F. Supp. 2d 1033, 1040-41 (N.D. Ill. 1999). The Lempas, as agents of Midwest, supervised Triplett, but do not qualify independently as employers. Therefore, the Title VII claims against the Lempas are dismissed, but not the claims against Midwest.

IV.

I need not address the defendant's argument that the retaliatory discharge claim is barred by the Illinois Human Rights Act because Triplett asserts this as a claim under Title VII, not as a state law claim.

V.

Accordingly, Counts I, II, and IV are dismissed against Stanley Lempa and Daniel Lempa, but not Midwest. This court has supplemental jurisdiction over the state law claim in Count III.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: August 3, 2001